UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| ANNA JOYCE NOBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. |
| | ) | 5:12-cv-329-JMH |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon cross-motions for summary judgment on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits. [Tr. 9—18].[1]  The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion [D.E. 15] and grant Defendant's motion [D.E. 18].

**I.  OVERVIEW OF THE PROCESS AND THE INSTANT MATTER**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2.   An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3.   If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4.   If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work.  If the claimant is able to continue to do this previous work, then he is not disabled.

5.   If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work.  If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ considered Plaintiff's claim in accordance with the five-step sequential evaluation process. [Tr. 9—18]. He first determined under

step one that Plaintiff has not engaged in substantial gainful activity since April 14, 2008, the application date. [Tr. 11]. Next, the ALJ continued to step two and found that Plaintiff has five medically determinable severe impairments, including chronic left arm pain, status post left upper extremity surgery, chronic obstructive pulmonary disease/tobacco abuse, borderline versus low average intellectual functioning, and depressive disorder. [Tr. 11].

After deciding that Plaintiff's impairments did not equal a listed impairment under step three, the ALJ proceeded to step four and found that Plaintiff has a residual functional capacity ("RFC") to perform light work. [Tr. 13]. Because Plaintiff has no prior work experience, the ALJ concluded that she has no past relevant work to perform with this RFC; however, he determined with the assistance of a vocational expert that other work exists in significant numbers nationally and across the state that Plaintiff can perform in her condition. [Tr. 17]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 17—18].

In this appeal, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence of record. Specifically, Plaintiff argues that

3

the ALJ erred by 1) failing to disqualify himself as an ALJ because his adjudication was impartial; 2) improperly relying on the testimony of psychological medical expert, Dr. Doug McKeown; 3) improperly discounting Plaintiff's credibility as to her statements regarding the intensity, persistence, and limiting effects of her symptoms; 4) relying on the vocational expert's testimony, as Plaintiff points out several errors in her testimony; and 5) disregarding the Appeals Council Order of 1/25/2010. [Tr. 84—87]; [D.E. 15-1]. The Court has considered arguments by Plaintiff and the Commissioner, as well as the administrative record, and, for the reasons stated below, affirms the Commissioner's decision.

## II. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v.*

4

*Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## III. FACTUAL AND PROCEDURAL BACKGROUND

At the time of her hearing, Plaintiff was a forty-seven year old woman with an eighth-grade education. [Tr. 44]. She has no past work experience, although she has applied for positions at Wendy's and McDonalds to no avail. [Tr. 60]. Plaintiff filed for disability under Title II on April 14, 2008, alleging disability beginning September 8, 2007. [Tr. 9]. The claim was denied both initially and upon reconsideration. [Tr. 80—81; 97—100; 103—05]. Plaintiff requested a hearing with the ALJ, which took place on April 20, 2009. [Tr. 25]. The ALJ issued an unfavorable decision denying disability on July 24, 2009, but the Appeals Council remanded the case to another ALJ for further proceedings. [Tr. 85—86; 91]. Another hearing was held on June 2, 2011, and another unfavorable decision was issued by a second ALJ on July 11, 2011. [Tr. 9—18]. Plaintiff now appeals from this second unfavorable decision. [D.E. 1].

According to Plaintiff, her medical problems began when she was injured in a car accident in 2005 and suffered a fracture in her left arm. [Tr. 324]. Plaintiff received surgery and an intramedullary rod was inserted in her arm. [Tr. 325–27]. She now complains of constant upper left arm pain, and has sought treatment for her left arm in the emergency room sporadically throughout the years, sometimes after minor falling accidents. [Tr. 419; 564]; [D.E. 15-1 at 4]. Plaintiff has not sought consistent treatment for her pain, nor has she sought prescriptions for pain medications, citing financial constraints. [Tr. 46–48]. Instead, Plaintiff takes Tylenol and Advil to alleviate her symptoms in her left arm. [Tr. 47; 52]. Notably, Plaintiff is right-handed. [Tr. 26].

Plaintiff received a consultative physical exam in May 2008 from Dr. Rita Ratliff. [Tr. 345]. Dr. Ratliff noted that Plaintiff walked with a normal gait, made good eye contact, could use her hands for fine and gross manipulation without difficulty, and had a full range of motion in all upper and lower extremities. [Tr. 347]. Further, Dr. Ratliff noted that while she did not attempt to raise her left shoulder overhead initially, "with diversion she seemed to have normal range of motion in her left shoulder." [Tr. 347]. Based on the examination, Dr.

Ratliff "found no evidence for restriction for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling." [Tr. 347]. Other physical constraints cited by Plaintiff include headaches, which she claims can last up to ten days. [Tr. 50]. Dr. Ratliff noted that these headaches are most likely tension related. [Tr. 347]. Plaintiff is also a chronic smoker, as she has smoked a pack of cigarettes a day for over thirty years. [Tr. 345].

Mentally, Plaintiff claims that she suffers from depression, and testing revealed that she had borderline to low average intellectual functioning. [Tr. 11]. In 2008, Melissa Couch, Ph.D., examined Plaintiff at the request of her attorney. Dr. Couch's assessment of Plaintiff is largely a collection of Plaintiff's self-reported symptoms, and Dr. Couch's speculation of how these symptoms could "likely" affect Plaintiff. [Tr. 331–38]. Dr. Couch did administer the Wechsler Adult Intelligence Scale test, from which Plaintiff fell in the "borderline" range between low average and mild cognitive impairment. [Tr. 334]. She was also administered a reading test, revealing that she reads on a fourth grade level, and the Personality Assessment Inventory, which revealed that she portrayed herself in a negative and/or pathological manner. [Tr. 334]. Dr. Couch

7

proceeded to conclude in a mental residual functional capacity questionnaire that Plaintiff would largely be unable to meet competitive standards in some work-related areas, and, in most work-related areas, would have no ability to function. [Tr. 339—43].

Another independent examiner, Dr. Emily Skaggs, Psy. D., came to quite opposite conclusions in 2011. [Tr. 473]. She noted that based on Plaintiff's responses to test questions, she was either "expressing severe psychopathology or attempting to fake bad." [Tr. 473]. Based off of her examination, she concluded that Plaintiff's ability to tolerate stress and sustain attention and concentration towards simple repetitive tasks were only slightly affected by her impairments, and her ability to respond appropriately to supervisors and coworkers was only moderately affected. [Tr. 474].

Notably, Plaintiff is still able to complete light household chores, do some shopping, watch television, play video games on a computer, go out to eat and to car shows and flea markets occasionally, visit with family and friends, prepare simple meals, work puzzles, use a telephone, read for enjoyment, pay bills, count change, and attend to all of her personal needs. [Tr. 12]. Moreover, although Plaintiff does not have a driver's license, she is

still able to drive, and blames her lack of driving on her inability to afford a vehicle. [Tr. 34]. Plaintiff is also married. [Tr. 43].

**IV. ANALYSIS**

Plaintiff's first argument is that ALJ Ronald Kayser engaged in improper conduct at the hearing such that he became an "adversarial participant" in the action, thus disqualifying himself to impartially adjudicate the case. Specifically, when ALJ Kayser telephoned Dr. Doug McKeown so that Dr. McKeown could testify as a medical expert at the hearing, ALJ Kayser asked Dr. McKeown several questions from a sheet entitled "Medical Assessment of Ability to do Work-Related Activities [Mental]" and recorded Dr. McKeown's answers. [Tr. 695—96]. Further, ALJ Kayser forged Dr. McKeown's signature at the end of the document and entered it into the record as an exhibit at the hearing, with no objection from Plaintiff. [Tr. 695—96].

Plaintiff's counsel did not object to the exhibit at the hearing, nor was the issue raised at any point in the administrative level. [D.E. 70, 77]. Because Plaintiff did not raise allegations of bias with the ALJ or the Appeals Council as instructed by 20 C.F.R. § 416.1440, the claim is arguably waived. *Millmine v. Sec'y of Health & Hum. Servs.*, No. 94-1826, 1995 WL 641300, at *2 (6th Cir.

9

Oct. 31, 1995) (citing *Muse v. Sullivan*, 925 F.2d 785, 790—91 (5th Cir. 1991)) ("Absent good cause, failure to raise the issue of bias before the Secretary constitutes waiver of the right to raise the issue on appeal."). Because Plaintiff was represented by different counsel at her hearing, the Court will entertain the issue on the merits; however, this does not help Plaintiff's case, as ALJ Kayser did not display sufficient bias or impartiality such that remand is warranted.

All due process requires in a Social Security disability hearing is that the hearing afforded be "full and fair." *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401—02 (1971)). Further, "the court must start from the presumption that administrative adjudicators are unbiased," and it is Plaintiff's burden to provide "convincing evidence that a risk of actual bias or prejudgment is present." *Wells v. Apfel*, No. 99-5548, 2000 WL 1562845, at *5 (6th Cir. Oct. 12, 2000); *Bailey v. Comm'r,* 413 F. App'x 853, 856 (6th Cir. 2011) (quoting *Navistar Int'l Transp. Co. v. U.S.E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)).

Under this framework, Plaintiff has not met her burden. To be clear, ALJ Kayser's conduct was not commendable, as it certainly created an appearance of

10

impropriety that he affixed Dr. McKeown's name to the exhibit. Regardless, because the Court has the benefit of the hearing transcript, which reveals that ALJ Kayser accurately read the form to Dr. McKeown and checked the boxes that aligned with Dr. McKeown's answers, the Court cannot conclude that ALJ Kayser's conduct showed bias or impartiality just because he then relied on that exhibit in his opinion. Plaintiff's argument, if it is not waived, is without merit.

Second, Plaintiff asserts that the ALJ improperly relied on Dr. McKeown's testimony. Among Plaintiffs complaints are 1) Dr. McKeown is not licensed to practice in Kentucky, but rather in Alabama and Florida; 2) Dr. McKeown also provides consultative exams for Alabama state disability services, which creates a conflict of interest with his role as a medical expert in a federal Social Security Administration case; 3) Dr. McKeown's provision of medical testimony without examining Plaintiff violates the American Psychological Association's Ethical Code of Conduct at Principle 9.01(b); and 4) Dr. McKeown relies on Dr. Skaggs's psychological exam in his opinion, an exam which he acknowledges may have been "invalid."

The Court is not persuaded by Plaintiff's arguments. First, there is simply no requirement in the regulations

11

that a medical expert be licensed in the Plaintiff's jurisdiction to review the record and provide a medical opinion. Dr. McKeown is a licensed psychologist in Alabama and Florida with an active practice in Alabama, and was thus qualified to review Plaintiff's medical records and provide a medical opinion to the ALJ. [Tr. 63]. Further, the fact that Dr. McKeown also serves for the state disability office does not create a conflict of interest with his involvement in this case, as Dr. McKeown never dealt with Plaintiff in his capacity as a state examiner. *Cf. Bergstad v. Comm'r of Soc. Sec. Admin.*, 967 F. Supp. 1195, 1203–04 (D. Or. 1997) (noting that a conflict of interest may arise if the medical expert serving in a federal case also took part in the claimant's state disability application that was denied, since he would have essentially had to reverse his prior medical diagnosis). Nor does Dr. McKeown's testimony run afoul of the American Psychological Association's Ethical Code of Conduct, since, under Principle 9.01(c), "[w]hen psychologists conduct a record review . . . and an individual examination is not warranted or necessary for the opinion, psychologists explain this and the sources of information on which they based their conclusions and recommendations." *Ethical*

*Principles of Psychologists and Code of Conduct*, AMERICAN PSYCHOLOGICAL ASSOCIATION, http://www.apa.org/ethics/code/index. aspx?item=12 (last visited July 15, 2013).

Finally, Plaintiff argues that Dr. McKeown erroneously relied upon Dr. Skaggs's medical opinion when forming his own, given his admission that Dr. Skaggs noted that Plaintiff's response pattern was possibly "invalid." [Tr. 67]. Zeroing in on the "invalid" testing comment, Plaintiff argues that the ALJ should have assigned greater weight to consultative psychologist Dr. Couch's opinion than to Dr. McKeown's and Dr. Skaggs's opinions.

However, the ALJ's choice to assign greater weight to Dr. McKeown's and Dr. Skaggs's opinions over Dr. Couch's opinion is supported by substantial evidence. The ALJ discussed Dr. Couch's medical report at the hearing and within his opinion in detail. He observed that Dr. Couch's treatment notes largely reflected the "claimant's subjective self-reporting" and, without "support in the record" nor "substantiation such as mental health treatment notes," explained how these self-reported symptoms *might* affect her if they were true. [Tr. 16]. He explained that because Dr. Couch did not rely on supporting treatment notes, treatment intervention, medication, or objective medical history, her opinion was not supported by objective

13

medical evidence. [Tr. 16—17]. The ALJ's reasoning is sound. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (holding that a physician's opinion can be discredited by the ALJ if the opinion is not supported by objective medical evidence).

Further, although Plaintiff focuses on the "invalid" nature of Dr. Skaggs's testing, she ignores that the reason that Dr. Skaggs noted that some of the testing was likely invalid was because the results showed that Plaintiff was either significantly impaired, "which was inconsistent with her mental status and interview," or was over-reporting symptoms. [Tr. 67]. Evidence of malingering is something that an ALJ is entitled to consider when deciding how much weight to assign to a physician's opinion. *King v. Astrue*, No. 6:09-162-JMH, 2010 WL 1257753, at *4 (E.D. Ky. Mar. 26, 2010) ("The ALJ is not required to accept Ms. Moore's findings, where other examinations indicate that Plaintiff is malingering."); *see also Paul v. Astrue*, 827 F. Supp. 2d 739, 744 (E.D. Ky. 2011) (approving the ALJ's consideration of Plaintiff's malingering).

In sum, because Dr. McKeown conducted a review of the record and provided his medical opinion, the ALJ's consideration of his testimony was not only not error — it was required. *See* Social Security Ruling 96-6p, 1996 WL

14

374180, at *2—3 (expressly providing that ALJ's "may not ignore these opinions" and holding that the opinion of a psychological consultant "may be entitled to greater weight than a treating source[']s medical opinion if the State Agency . . . consultant's opinion is based on a review of a complete case record."); [Tr. 63].  The ALJ followed the appropriate legal framework, and his opinion to discredit Dr. Couch's opinion and assign greater weight to Dr. McKeown and Dr. Skaggs was supported by substantial evidence in the record.  Nothing more is required.

Plaintiff's third argument is that the ALJ improperly discounted Plaintiff's credibility as to her statements regarding the intensity, persistence, and limiting effects of her symptoms.  Specifically, Plaintiff argues that the ALJ did not consider medical evidence from x-rays that showed "post-surgical changes to her left arm" which "might medically explain Ms. Noble's severe pain."  [D.E. 15-1 at 19].

An "ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  In this case, the ALJ's reasons for discounting Plaintiff's credibility were supported by

substantial evidence in the record; therefore, deference to his decision is appropriate. Specifically, the ALJ considered 1) the fact that claimant has never worked, raising questions as to whether her current unemployment is truly the result of medical problems; 2) evidence of malingering; 3) the extremity of some of her descriptions of the severity of her pain, which are unlikely given the remainder of the record; 4) the fact that Plaintiff only uses Advil and Tylenol to relieve her pain; 5) her infrequent trips to the doctor; 6) Plaintiff's self-reported extensive daily activities, which show that she is able to do light household chores, some shopping, watch television, smoke cigarettes, play video games, go out to eat, visit with family and friends, prepare meals, use a telephone, work puzzles, read for enjoyment, pay bills, count change, and attend to all of her personal needs; and 7) her generally unpersuasive appearance and demeanor. [Tr. 15—16].

        The ALJ was entitled to consider all of these factors when making a credibility determination. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and

observations by our employees." Also considered are "daily activities," "medication you take," and "treatment, other than medication, you receive."); *see also Walters v. Sec'y of Health & Human Servs.*, 127 F.3d 525, 532 (6th Cir. 1997) (citing *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments"). Further, the fact that there was some medical evidence in the record that "might" support an opposite conclusion is irrelevant, as it is the function of this Court to determine whether substantial evidence supported the ALJ's decision, not whether the case could have been decided differently. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)) ("[W]e do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Instead, we consider the ALJ's decision determinative if there is 'such relevant evidence as a reasonable mind might accept' as sufficient to support the ALJ's conclusion.").

Fourth, Plaintiff argues that the ALJ committed error by relying on the vocational expert's ["VE"] testimony, as Plaintiff points out errors in her testimony.

17

Specifically, Plaintiff argues that the VE's testimony was deficient because 1) the hypothetical on which the VE based her opinion described an individual who could operate a motor vehicle, although Plaintiff does not have a driver's license; 2) the hypothetical relied on the mental restrictions from Dr. McKeown; and 3) two of the three jobs that the VE opined that Plaintiff could perform in her condition were not in compliance with the ALJ's hypothetical because they assume an individual who is capable of semiskilled and/or medium work, whereas the ALJ concluded that Plaintiff is only capable of light unskilled work.  Her arguments again fall short.

First, although Plaintiff claims in her brief that she has "never been able to obtain a driver's license nor operate any motor vehicle," Plaintiff admitted in her 2009 hearing that while she doesn't have her license, she can drive.  [Tr. 34].  Further, she admitted that the only reason that she does not have her driver's license is because she cannot afford insurance on a vehicle.  [Tr. 34].  There is no indication that this changed between her 2009 hearing and her 2011 hearing, as her only comment about driving at her 2011 hearing is that she still does not have a driver's license.  [Tr. 44].  Thus, it was not "fatally deficient" error for the ALJ to include this

18

information in his hypothetical.  Second, for the reasons discussed above, the ALJ's decision to give significant weight to Dr. McKeown's opinion over Dr. Couch's opinion was supported by substantial evidence.  Therefore, the ALJ did not err by including Dr. McKeown's restrictions in the hypothetical to the VE.

Moreover, while the Court agrees that two of the jobs supplied by the VE did not comply with the ALJ's hypothetical, Plaintiff does not contest that the third job, assembly, is a light unskilled job existing in significant numbers in the national economy.  Thus, because one of the VE's proffered jobs aligns with Plaintiff's restrictions expressed in the hypothetical and exists in significant numbers in the economy, with 14,000 jobs in the state and 740,000 in the nation, the ALJ correctly concluded that there is available work that Plaintiff can perform in her condition.  *See Stewart v. Sullivan*, No. 89-6242, 1990 WL 75248, at *4 (6th Cir. June 6, 1990) (holding that 125 jobs in the region and 400,000 jobs in the national economy was significant, and, thus, there were jobs available in the national economy for the claimant to perform).  Therefore, reliance on the VE's testimony was not error.

Plaintiff's fifth and final argument is that the ALJ disregarded the Appeals Council Order of 1/25/2010, which remanded the case to another ALJ after Plaintiff's first hearing. [Tr. 84—87]. The Appeals Council directed the ALJ to "give consideration to the examining source opinion, prepared by Melissa Couch, Ph.D.," because the first ALJ entirely failed to even mention Dr. Couch's assessment. [Tr. 86]. As discussed above, however, ALJ Kayser explained in detail why Dr. Couch's opinion was not supported by objective medical evidence and why he chose to assign more weight to examining physician Dr. Skaggs and reviewing physician Dr. McKeown. Thus, the ALJ gave consideration to Dr. Couch's opinion, as instructed by the Appeals Council. The fact that he chose to assign greater weight to other physicians was both in his discretion and supported by substantial evidence.

**V. CONCLUSION**

Accordingly, for the reasons stated above, **IT IS ORDERED:**

1) that Plaintiff's Motion for Summary Judgment [D.E. 15] is **DENIED;**

2) that the Commissioner's Motion for Summary Judgment [D.E. 18] is **GRANTED;**

20

This the 17th day of July, 2013.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge